IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| JERRY LYNN HETH, PRO SE, § | |
| TDCJ-CID # 532024, § | |
| SID #1527335, § | |
| Previous TDCJ-ID #363917, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:03-CV-0124 |
| § | |
| RONALD E. LACY, KELLY SUTTON, § | |
| BILLY TOMLINSON, § | |
| MARILYN REEVES, and § | |
| CYNTHIA CHAPMAN, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Plaintiff JERRY LYNN HETH, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-named defendants and has been granted permission to proceed in forma pauperis

Plaintiff claims the defendants displayed deliberate indifference to his serious medical need in violation of the Eighth Amendment protection against cruel and unusual punishment. Plaintiff requests compensation for loss of eyesight and other problems resulting from delay in medical care and the return of lost good-time credit totaling 2,190 days.

Upon review of plaintiff's original complaint, the Court issued a November 12, 2003 Order to Investigate and Submit Martinez Report. The Office of the Texas Attorney General responded by filing, on January 30, 2004, an Affidavit of Dr. David L. McCartney, a

physician who is Board certified in Ophthalmology, to which plaintiff's relevant medical records were attached. Plaintiff filed his response on February 11, 2004.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The District Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff to determine if his claims present grounds for dismissal or should proceed to answer by defendants.

## SPECIFIC FACTUAL ALLEGATIONS

Plaintiff alleges he was refused emergency treatment on December 22, 23, 24, and 25 of 2002 for his complaints of pain and vision loss in his left eye. Plaintiff states defendant

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

2

LACY was gone from December 21, 2002 until December 26, 2002 and had left the telephone number where he could be reached by the nurses during that time.  Plaintiff alleges he went to the infirmary on December 22, 2002 complaining to defendant TOMLINSON that his eye had been stinging and becoming increasingly red since Thursday night, December 19th.  He says defendant TOMLINSON told him that, since he had waited that long before coming to the infirmary, the problem wasn't an emergency and instructed him to return to his cell and submit a sick call request.  Plaintiff says that, because he had experienced an attack of similar symptoms years earlier, he requested the medication he had been given then, Pred Forte eye-drops.  He states nurses refused his requests for medication and an ice-pack, and that they did not call a doctor or physician's assistant.

Plaintiff says he returned to the infirmary on December 23, 2002, but was again denied medication, an ice-pack, and a visit with a doctor or a physician's assistant.

Plaintiff alleges he went to the infirmary on December 24, 2002, at which time, he says, defendant REEVES informed him that defendant SUTTON had pulled his records and called the doctor, who authorized the administration of eye-drops, to be discontinued if they made plaintiff's eye worse.  The eye-drops did cause plaintiff's symptoms to worsen and were discontinued.  Plaintiff claims defendant REEVES refused him medication and an ice-pack, refusing to do anything other than what SUTTON had instructed and told plaintiff there was nothing that could be done before his doctor's appointment on December 26th.  Plaintiff also complains defendant REEVES made a mistake in the spelling of his name and his inmate identification number in entries in his chart.

Plaintiff further alleges he returned to the infirmary on December 25, 2002, at

3

which time he saw defendant CHAPMAN but was denied medication, an ice-pack, and the chance to see a doctor or physician's assistant. Plaintiff claims "medical employee fail[ed] to write in chart, [his] walk-in emergency request for 12-25-02, stating [he] enter[ed] the infirmary."

Plaintiff alleges he saw defendant Dr. LACY on December 26, 2002, and reminded LACY he had treated plaintiff for similar complaints in 1986, when he was diagnosed with a pupillary block secondary to Iritis and treated with Pred Forte. He says LACY then initiated treatment with Pred Forte drops and instructed Nurse Morris to schedule an appointment with an ophthalmologist. Plaintiff says he was seen by Dr. Howard, at Howard Eye Care, on December 31st and saw Dr. LACY again in January of 2003. Plaintiff says he asked LACY at that time about a cataract operation, but LACY responded he couldn't see a cataract and that the eye-drops must be blocking it. Plaintiff also complains of Dr. LACY's conduct during the January exam, saying he asked plaintiff why he was in prison and rubbed his groin against plaintiff's knee.

## *MARTINEZ* REPORT

By his Affidavit, submitted by the Attorney General as a *Martinez* report, Dr. David L. McCartney avers that plaintiff's medical records show plaintiff saw a nurse on December 23, 2003 for complaints of left eye redness, pain, irritation, and discharge. Records show a saline rinse was performed, a December 26th doctor's appointment was made, and plaintiff's vision was tested as 20/20 in the right eye and 20/70 in the left eye. When plaintiff returned the next day, a physician's assistant was called and prescribed Gentamycin 4 times a day for seven days.

4

Plaintiff was seen by Dr. LACY on December 26th, who prescribed Pred Forte eye-drops, an intramuscular injection of Kenalog, and ordered an examination by an ophthalmologist as well as a follow-up appointment with a physician's assistant in a week. Doctor LACY also saw plaintiff on December 27th and found the eye looked better and plaintiff reported there was less pain. Plaintiff was started on prednisone and prescribed Darvocet for five days.

Doctor McCartney opined that, given the fact that plaintiff's visual acuity was unchanged from the time of his December 23rd exam to his examination by the ophthalmologist on December 31st, it appeared any delay did not damage plaintiff's visual acuity. Further, he opined the 20/70 vision in plaintiff's left eye was probably the result of the cataracts observed by the ophthalmologist and stated it took years for such changes to reduce vision acuity to 20/70. Doctor McCartney also observed that the only change in treatment made by the ophthalmologist was to add atropine which McCartney characterizes as "a small measure which in and of itself would make no difference for the patient's long-term outcome."

Plaintiff responds by attacking Dr. McCartney for failure to use sound judgment, failure to perform officially directed duties and responsibilities, insubordination, falsification and fabrication of information, misuse of authority, favoritism, discrimination, and "discourteous treatment of offender with prejudice[3]." Plaintiff argues Dr. McCartney is mistaken in stating plaintiff's earlier incident of Iritis was in 1988 when, in fact, it was 1986 and is mistaken in paragraph 4 of his Affidavit where he says plaintiff's ophthalmological appointment was made for December 21st when, in fact, it was for December 31st. Plaintiff also challenges the medical

---

[3] Plaintiff's February 11, 2004 response at page 2.

5

record entry that he received a saline rinse on December 23rd and the entry that his eye was better on December 27th, arguing that his eye was unchanged.

Plaintiff also argues Dr. Howell, the ophthalmologist, failed to recognize Dr. Currie's 1996 diagnosis of pupillary block secondary to Iritis which, plaintiff says, almost cost him his left eye. If Dr. Howell had known of Dr. Currie's diagnosis or recognized its significance, plaintiff contends, Howell would have drawn a connection between Dr. LACY's alleged neglect of plaintiff's condition in 1986 and the alleged neglect by LACY's nursing team December 22, 2002 through December 25, 2002.

Plaintiff contends Dr. McCartney tries to minimize the seriousness of Iritis and says atropine is "the most powerful of all eye medication on earth." He states that "30 years of psych., medical, and medication abuse has cause [sic] his life and physical condition [sic] beyond repair."

## THE LAW AND ANALYSIS

**1. Return of Goodtime Credits**

Plaintiff has requested the return of all lost goodtime credits totaling 2,190 days. A claim for good-time credits is foreclosed by *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and plaintiff must seek such relief through habeas. *Wolff v. McDonnell*, 418 U.S. 538, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973).

**2.     Unexhausted Claims**

Plaintiff's claims concerning Dr. LACY's conduct during the January 2003

examination were not advanced in either of the grievances, nos. 2003150654[4] and 2003080362[5], which he has submitted to show exhaustion of administrative remedies.  Further, plaintiff has not argued he exhausted administrative remedies on this claim in any other way.

Title 42, United States Code, 1997e(a), as amended by Section 803 of the Prison Litigation Reform Act of 1995, provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Plaintiff's grievances do not complain of LACY's January 2003 conduct and were not adequate to exhaust administrative remedies with respect to his complaints concerning LACY's conduct during the January 2003 examination.

By choosing to file and pursue suit before meeting the section 1997e exhaustion of administrative remedies requirement, plaintiff has sought relief to which he was not entitled. *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).  Consequently, these claims lack an arguable basis in law and are frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## 3.  Inaccurate Medical Records

Plaintiff claims various nurses failed to record his daily trips to the infirmary during the period of December 22, 2002 through December 25, 2002 and that defendant REEVES made a mistake in his records, spelling his name incorrectly and making a mistake in recording his prisoner identification number.  Plaintiff has a constitutionally protected right to medical care which does not constitute deliberate indifference to his serious medical needs,

---

[4]Attached to plaintiff's July 9, 2003 motion for leave to file grievances.

[5]Attached to plaintiff's original complaint.

7

*Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291-93, 50 L.Ed.2d 251 (1976); however, he does not have a right to perfectly accurate records. Even if plaintiff could show these mistakes affected the treatment he received, these allegations might state a claim of negligence, if that; however, "negligent medical care does not constitute a valid section 1983 claim." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Consequently, these claims lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**4. Delay in Initial Examination by a Physician and Treatment by Dr. LACY**

Plaintiff tries to allege a conspiracy among all the defendants to keep him from a physician until after Christmas; however, plaintiff alleges no material fact to support his claim of conspiracy. Consequently, even if one assumes, *arguendo*, an illegal goal to deprive plaintiff of medical care for serious medical needs, plaintiff's conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983. *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990).

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under Title 42, United States Code, section 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291-93, 50 L.Ed.2d 251 (1976). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). Medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate

indifference.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

A delay which does not aggravate or exacerbate the medical condition does not constitute a constitutional violation.  *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988).  A delay in medical care to a prisoner can constitute an Eighth Amendment violation only if there has been deliberate indifference, which results in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Although plaintiff faults defendant REEVES for her mistakes in recording his name as "Helm" rather than "Heth" and recording his prisoner ID number as beginning with an "8" rather than a "5," he does not challenge the accuracy of her December 23, 2002 Nursing Assessment Protocol for Eye Irritation[6] which shows his visual acuity as 20/70 for the left eye on that date and which reflects that a doctor's appointment was made for plaintiff for December 26th.  Further, plaintiff accepts the accuracy of the assessment of visual acuity noted by Dr. Howell on December 31, 2002[7] showing his visual acuity in the left eye as 20/70.  Thus, it appears that any delay from December 23rd, even if it were unreasonable, did not result in the substantial harm necessary to support a claim of deliberate indifference.  Moreover, plaintiff contends his first visit was on December 22nd, after he, himself, waited from the evening of December 19th.  Plaintiff alleges no fact to show the delay of a single day worsened his Iritis in any way or resulted in additional damage to his eye.  Consequently, plaintiff's claim against all the defendants based on the delay in medical treatment lacks an arguable basis in law and is

---

[6] Plaintiff's records attached to the January 30, 2004 Affidavit of David L. McCartney, submitted as the *Martinez* report, at D-00015.

[7] Plaintiff's records attached to the January 30, 2004 Affidavit of David L. McCartney, submitted as the *Martinez* report, at D-00018.

9

frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The facts presented by plaintiff show that when defendant LACY examined plaintiff on December 26th, he provided prompt and responsive treatment, prescribing effective medication and securing an appointment for plaintiff with a specialist only five days later. Plaintiff does not contend LACY should also have prescribed Atropine on December 26th or that he was harmed by not having it sooner. He also does not argue LACY could have gotten him to an ophthalmologist sooner, nor does he state how he would have been helped had the five-day interval between seeing LACY and seeing the ophthalmologist been less. Plaintiff has failed to allege facts to support a claim of deliberate indifference by defendant LACY and has, therefore, failed to state a claim on which relief can be granted.

To the extent plaintiff makes references to dissatisfaction with medical care received from defendant LACY in 1986, or from others even earlier, the Court notes that the two-year Texas general personal injury limitations period applies to plaintiff's civil rights claims. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Plaintiff cannot bootstrap claims based on his dissatisfaction with LACY's treatment of his Iritis in 1986 onto his 2003 Iritis attack. Being outside the applicable statutes of limitations, such claims lack an arguable basis in law and are, therefore, frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## CONCLUSION

Pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the conclusion of the United States District Judge that the Civil Rights Complaint filed pursuant to Title 42, United States Code,

section 1983, by plaintiff JERRY LYNN HETH should be and hereby is DISMISSED WITH PREJUDICE AS FRIVOLOUS, FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED, and WITH PREJUDICE FOR PURPOSES OF PROCEEDING IN AN IN FORMA PAUPERIS PROCEEDING PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 1915(b). *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998); 42 U.S.C. § 1997e(a).

The United States District Clerk shall mail a copy of this Memorandum Opinion and Order of Dismissal to plaintiff and to any attorney of record by first class mail. The Clerk shall also mail copies of this order to TDCJ-Office of the General Counsel, P.O. Box 13084, Austin, TX 78711; and to the Pro Se Clerk at the U.S. District Court for the Eastern District of Texas, Tyler Division.

All pending motions are DENIED.

IT IS SO ORDERED.

ENTERED this  12th  day of September, 2005.

/s/ Mary Lou Robinson
MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE